**In re CARTER.**

[Cite as *In re Carter* (1997), 123 Ohio App.3d 532.]

Court of Appeals of Ohio,
Fourth District, Pickaway County.

No. 97 CA 7.

Decided Nov. 6, 1997.

534

Denise MacFadden, Circleville Juvenile Prosecutor, for appellee.
Lori Pritchard Clark, for appellant.

*Per Curiam.*

The Pickaway County Juvenile Court found William L. Carter, a minor, guilty of drug abuse in violation of R.C. 2925.11, a felony of the first degree if committed by an adult. Carter now appeals, asserting that he was prejudiced by the trial court's decision to allow the unreliable hearsay statements of his codefendant into evidence. We agree. Carter also asserts that his conviction was not supported by sufficient evidence at trial. We agree. Accordingly, we reverse the judgment of the trial court.

I

Ohio State Highway Patrol Trooper Russell Cantrell clocked a car traveling south on U.S. Route 23 in excess of seventy miles per hour. Upon approaching the car, Trooper Cantrell noticed that the driver appeared nervous and upset. Carter was seated next to the driver, an adult male was seated behind the driver, and an adult female was seated behind Carter. The driver, later identified as Lynn Drake, provided Trooper Cantrell with false names both for herself and the owner of the car. Suspecting that the car was stolen, Cantrell called for backup and asked Drake to step out of the car.

Trooper Hal Hardesty, the second officer to arrive on the scene, removed Carter from the car for questioning. Carter appeared nervous, and told Hardesty that his name was Christopher Smith.

Trooper Pringle, the third officer on the scene, removed the female passenger from the back seat for questioning. The woman provided Pringle with her true name, Angela Folley. When Pringle patted Folley down for weapons, he discovered a crack pipe with cocaine residue in her pocket. Pringle then read Folley her rights and proceeded to question her after she waived those rights.

Folley immediately told Pringle that there were approximately seven ounces of crack cocaine in her purse, but stated that the cocaine did not belong to her. Folley told Pringle that Mr. White,[1] the other individual seated in the rear of the

---

1. The record shows that "Mr. White" is an alias for the adult male in the car. However, as we are uncertain of the man's true name, we will continue to refer to him as "White."

car, gave her the cocaine during their ride south from Detroit. Folley repeatedly stated that the cocaine belonged to White and Carter. Folley also stated that during the five or six restroom stops they made between Detroit and Pickaway County, White ordered Carter to remain in the car and watch Folley's purse. Finally, Folley revealed to Pringle that she was addicted to crack cocaine and that she had smoked crack in the car earlier that day.

Folley also signed a written statement admitting that she smoked her own crack cocaine during the car trip. The statement reported that when Folley ran out of crack cocaine to smoke, White gave her a plastic bag of cocaine he had in his pocket. He then placed the bag in her purse. Folley's written statement refers to White as the only owner of the cocaine.

Lynn Drake, the driver of the vehicle, also gave a signed statement to police. In her statement, Drake said that the cocaine in Folley's purse belonged to White.

The state served both Folley and Drake, who were housed in the Pickaway County Jail, with subpoenas to testify at Carter's trial. The day before trial, however, the women were released, and they returned to Michigan. Additionally, each filed a motion to quash her subpoena. Neither appeared on the day of trial.

At trial the state established through the testimony of Troopers Cantrell and Hardesty that bags of white powder were found in a purse on the floor in front of the right back seat of the car, and that Carter was riding in the right front seat when the car was stopped. Tammy Bonner, a scientist for the Ohio State Highway Patrol Crime Lab, confirmed that the substance was crack cocaine and reported that the bags had no readable fingerprints on them.

The state then called Trooper Pringle to testify. Carter objected on the ground that the expected testimony dealing with codefendant Folley's statement was hearsay. The court continued the case for five days. When the trial resumed, the state again called Pringle to the stand. Carter renewed his objection as to the hearsay testimony regarding Folley's statements, but agreed to stipulate that the state had made reasonable efforts to obtain Folley's presence. Carter argued that the statements were untrustworthy and therefore inadmissible regardless of the witness's availability. The court overruled Folley's and Drake's motions to quash, but found that they were unavailable as defined by Evid.R. 804(A), and that the testimony was admissible.

The court found Carter guilty of violating R.C. 2925.11, a felony of the first degree if committed by an adult. The court sentenced Carter to the Ohio Department of Youth Services for a minimum of six months or a maximum sentence to age twenty-one. The sentence was suspended, however, on the

conditions that Carter consent to a transfer to Michigan to face charges pending against him there, and that he stay out of Ohio until reaching age twenty-one.

Carter timely appealed, asserting the following assignments of error:

"I. The lower court erred to the prejudice of the Appellant by admitting the extra-judicial statements of a co-defendant over the Appellant's objections.

"II. The lower court erred to the prejudice of the Appellant when it convicted him of drug abuse in the absence of sufficient, credible evidence.

"III. The lower court erred to the prejudice of the Appellant when it rendered a decision contrary to the manifest weight of the evidence."

## II

In Carter's first assignment of error, he asserts that the trial court erred by finding that Folley's statements to Trooper Pringle were admissible under an exception to the rule against hearsay. Specifically, Carter contends that the state failed to show both that Folley was unavailable and that her statements were reliable as required by Evid.R. 804. The state maintains that Folley was unavailable and that her statements were reliable as statements against interest.

■ A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058; *State v. Hymore* (1967), 9 Ohio St.2d 122, 38 O.O.2d 298, 224 N.E.2d 126. The term "abuse of discretion" connotes more than an error of law; it implies that the court acted unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142. When applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308–1309.

## A

■ In *State v. Keairns* (1984), 9 Ohio St.3d 228, 9 OBR 569, 460 N.E.2d 245, the Ohio Supreme Court set forth a two-part test for determining the admissibility of hearsay evidence pursuant to Evid.R. 804. Under the first prong of the test, the trial court must apply Evid.R. 804(A) to determine whether the declarant is unavailable to testify at trial. Evid. R. 804(A) provides:

"Hearsay Exceptions; Declarant Unavailable.

"(A) Definition of Unavailability. 'Unavailability as a witness' includes situations in which the declarant:

"* * *

"(5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means."

The proponent of the testimony is required to show that he or she made a reasonable good faith effort to secure the attendance of the witness. *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597; *State v. Keairns* (1984), 9 Ohio St.3d 228, 9 OBR 569, 460 N.E.2d 245, paragraph two of the syllabus. Furthermore, the Ohio Supreme Court requires a determination of unavailability to "be based on testimony of witnesses rather than hearsay not under oath unless unavailability is conceded by the party against whom the statement is being offered." *Id.* at paragraph three of the syllabus. A record showing that subpoenas were issued unsuccessfully, without sworn testimony, is insufficient to demonstrate the unavailability of the witness. *Id.* at 232, 9 OBR at 572–573, 460 N.E.2d at 249–250. See, also, *Karst v. Goldberg* (1993), 88 Ohio App.3d 413, 422, 623 N.E.2d 1348, 1354.

In this case, the state, as the proponent of Folley's statements to Pringle, had the burden of establishing Folley's unavailability. The state did not offer any sworn testimony to show that Folley was unavailable. However, just prior to the court's ruling on Folley's availability, Carter stipulated that the state had attempted to procure the witnesses' presence. Because Carter conceded that the state made a reasonable effort to procure Folley's presence before the court, the state was not required to offer sworn testimony establishing her unavailability. See *Keairns, supra.* Therefore, we find that the court did not abuse its discretion by finding that Folley was unavailable pursuant to Evid.R. 804(A).

B

Under the second part of the *Keairns* test, the state must show that the out-of-court statement bears sufficient indicia of reliability. *Keairns,* 9 Ohio St.3d at 230, 9 OBR at 571, 460 N.E.2d at 248. Generally, if evidence falls within a hearsay exception established by Evid. R. 804(B), its reliability can be inferred without a specific showing of trustworthiness. *Id.* Under Evid. R. 804(B)(3), a statement which the offering party shows was against the declarant's interest when made is automatically admissible if the declarant is unavailable. Thus, a statement that may expose the declarant to criminal liability is an exception to the general hearsay rule. Evid.R. 804(B)(3). In such an instance, the proponent

of the hearsay is required to demonstrate that "corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.*

In *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, the United States Supreme Court listed four factors which indicate that statements against the penal interest of the declarant are sufficiently trustworthy to be admitted into evidence. Those factors are (1) the spontaneity of the statements, (2) whether the statements are corroborated by other evidence, (3) whether the statements are self-incriminating and against penal interest, and (4) whether the declarant was available for cross-examination by the opposing party. *Id.* at 300–301, 93 S.Ct. at 1048–1049, 35 L.Ed.2d at 311–312. The Ohio Supreme Court has adopted these factors for determining admissibility pursuant to Evid.R. 804. *State v. Sumlin* (1994), 69 Ohio St.3d 105, 110, 630 N.E.2d 681, 685. In addition to these factors, the prosecution must overcome the Confrontation Clause by showing "from the totality of circumstances" that the hearsay statements it seeks to admit are supported by "particularized guarantees of trustworthiness." *State v. Gilliam* (1994), 70 Ohio St.3d 17, 21, 635 N.E.2d 1242, 1246, citing *Ohio v. Roberts* (1980), 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608, and *Idaho v. Wright* (1990), 497 U.S. 805, 819, 110 S.Ct. 3139, 3148–3149, 111 L.Ed.2d 638, 655. See, also, Sixth Amendment to the United States Constitution.

In this case, we find that three of the four *Chambers* criteria were not satisfied. Folley's statements to Trooper Pringle were made spontaneously, shortly after he began questioning her. However, Folley's assertion that the cocaine belonged to Carter was not corroborated by other evidence. Folley and Drake each signed written accounts of their police interviews in which they indicated that the cocaine belonged only to White. Furthermore, all the cocaine found was either on Folley's person or in her purse; no drugs were found on Carter. Folley's credibility is also suspect, given her recent criminal record, which includes a misdemeanor fraud conviction and a felony conviction for breaking and entering. She did not disclose either of these convictions to Pringle when he questioned her about her record. While the fact that Folley provided her true name and accurately described the location of the cocaine corroborates her statement in part, it does not corroborate her assertion that the cocaine belonged to Carter.

The third criterion also weighs against Folley's credibility. In a typical Evid.R. 804(B)(3) statement-against-interest scenario, there is only one accused criminal, and a declarant's statement subjecting the declarant to criminal liability exonerates the accused entirely. *State v. Sumlin* (1994), 69 Ohio St.3d 105, 109, 630 N.E.2d 681, 684. In such a case, the declarant claims responsibility for the

crime, and the accused can be guilty only if the declarant was untruthful. *Id.* Thus, the trustworthiness of the declarant's statement is implied in the declarant's assumption of the risk of punishment. *Id.* In contrast, "a codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another." *Lee v. Illinois* (1986), 476 U.S. 530, 545, 106 S.Ct. 2056, 2064, 90 L.Ed.2d 514, 529.

In this case, the consequences of Folley's statements weigh heavily against the statements' trustworthiness. The state presented physical evidence that Folley possessed drugs, and testimonial evidence that Folley told Pringle that Carter possessed and sold drugs. Folley's statements do not substitute herself for Carter. In fact, it is likely that Folley believed that she could exculpate herself somewhat, if not entirely, by identifying Carter as a drug dealer and the owner of the cocaine in her purse. Thus, the trustworthiness inherent in a traditional statement-against-interest scenario is absent in this case.

Finally, Folley was not available for cross-examination. Folley's statements to police combined with her written statement and the written account of her interview with police create a material ambiguity regarding the ownership of the cocaine. Carter had no opportunity to confront Folley or ask her to clarify this ambiguity.

Having considered the above factors and the totality of circumstances, we find that Folley's statements were not trustworthy. We conclude that the statements did not meet the requirements for admissibility of a statement against interest under Evid.R. 804(B)(3) and the Confrontation Clause. Therefore, we find that the trial court abused its discretion by allowing Folley's hearsay statements into evidence.

## C

 Finally, we must consider whether the error in this case prejudiced Carter and therefore constitutes reversible error. The Ohio Supreme Court has determined that constitutional errors, such as the right to confront witnesses, are not prejudicial if they are harmless beyond a reasonable doubt. *State v. Williams* (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, paragraph three of the syllabus. See, also, *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 682, 106 S.Ct. 1431, 1437, 89 L.Ed.2d 674, 685. An error in the admission of evidence "is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *Williams* at paragraph six of the syllabus. Where the admission of evidence did not violate an accused's constitutional rights, the error is still prejudicial unless there is no reasonable

possibility that exclusion of the evidence would have affected the result. *State v. Sibert* (1994), 98 Ohio App.3d 412, 429, 648 N.E.2d 861, 871.

We find that the evidence remaining after Folley's statements are excluded from consideration does not constitute overwhelming evidence of Carter's guilt. Furthermore, we find that it is reasonably probable that the exclusion of Folley's statements would have affected the result in this case. Accordingly, we sustain Carter's first assignment of error.

## III

In his second assignment of error, Carter asserts that the trial court erred by denying his Crim.R. 29 motion for acquittal because the evidence was insufficient to support a finding of guilt. Therefore, Carter requests this court to reverse the trial court's judgment and enter final judgment in his favor. In his third assignment of error, Carter asserts that his conviction is against the manifest weight of the evidence.

Carter's challenge to the manifest weight of the evidence is rendered moot by our ruling on his first assignment of error. See App.R. 12(A)(1)(c). However, since the sufficiency-of-the evidence issue affects Carter's constitutional protection against double jeopardy, we must address Carter's second assignment of error. *State v. Lovejoy* (1997), 79 Ohio St.3d 440, 449–450, 683 N.E.2d 1112, 1119–1120; *State v. Larsen* (June 26, 1997), Franklin App. No. 96APA10–1401, unreported, 1997 WL 360846.

The Ohio Supreme Court outlined the role of an appellate court presented with a sufficiency-of-evidence argument in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." See, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573–574.

This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720–721. Rather, the test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to

ultimate facts." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. Sufficient evidence may be direct, circumstantial, or both. *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825–826.

In order to sustain Carter's conviction for violating R.C. 2925.11, we must determine if the probative evidence introduced at trial could convince an average person beyond a reasonable doubt that Carter did "knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(A). "Knowingly" is defined by R.C. 2901.22(B) as follows:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

Additionally, an accused's flight or assumption of a false name constitutes "evidence of consciousness of guilt, and thus of guilt itself." *State v. Williams* (1997), 79 Ohio St.3d 1, 11, 679 N.E.2d 646, 657, citing *State v. Eaton* (1969), 19 Ohio St.2d 145, 160, 48 O.O.2d 188, 196, 249 N.E.2d 897, 906.

In the context of drug offenses, R.C. 2925.01(L) defines "possess" in the following terms:

" 'Possess' or 'possession' means having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

Possession may be actual or constructive. If the evidence demonstrates that a defendant was able to exercise dominion and control over a substance, even though the substance was not within his or her immediate physical possession, the defendant can be convicted of possession. *State v. Wolery* (1976), 46 Ohio St.2d 316, 329, 75 O.O.2d 366, 374, 348 N.E.2d 351, 360–361.

Carter contends that without Folley's hearsay statements, the physical evidence does not show that he actually or constructively possessed the cocaine in Folley's purse. The *Jenks* standard does not explicitly limit our analysis to evidence *properly* admitted at trial; it merely states that we are to "examine the evidence admitted at trial." *Jenks* at paragraph two of the syllabus. Whether erroneously admitted evidence should be considered when reviewing a verdict for sufficiency is a question that has never been directly addressed by Ohio courts. However, in applying *Jenks,* our courts consistently base their analysis on only the properly admitted evidence. See *Larsen, supra,* and *State v. Sowards* (June 6, 1996), Columbiana App. No. 94–C–70, unreported, 1996 WL 307263 (evidence remaining after improper testimony excluded was insufficient to sustain defen-

dant's conviction). See, also, *State v. Mitchell* (Aug. 26, 1996), Stark App. No. 95 CA 00411, unreported, 1996 WL 488824; *State v. Bolden* (Mar. 21, 1996), Cuyahoga App. No. 68105, unreported, 1996 WL 125644; *State v. Manring* (Dec. 10, 1993), Jackson App. No. 92 CA 699, unreported, 1993 WL 524978; and *State v. Lantz* (June 10, 1992), Vinton App. No. 475, unreported, 1992 WL 129327.

In this case, the trial record reflects that Carter provided officers and the court with a false name and birthdate. Evidence properly adduced at trial also indicates that Folley smoked crack cocaine in Carter's presence. Finally, the evidence properly adduced at trial shows that Folley's purse contained crack cocaine and that the purse was found in the rear passenger seat in the car, directly behind Carter.

The state contends that Carter's use of an alias constitutes sufficient evidence of Carter's knowing mental state. The state further contends that Carter exerted control, and thus constructive possession, over the cocaine by watching over the purse while the adults in the car used the restroom. However, Carter's supposed exertion of control over the purse was supported at trial only by hearsay statements made by Folley. None of the evidence properly adduced at trial indicates that Carter possessed the cocaine in any way. Thus, even when construing the evidence properly adduced at trial in the light most favorable to the state, we cannot conclude that any rational trier of fact could be convinced beyond a reasonable doubt that Carter knowingly exerted dominion and control over the cocaine.

Accordingly, we sustain Carter's second assignment of error.

IV

In conclusion, we sustain Carter's first assignment of error and find that the trial court committed prejudicial error by admitting the hearsay testimony of Folley into evidence. Furthermore, when the improperly admitted hearsay statements are excluded from consideration, we find that the trial court convicted Carter without sufficient evidence of his guilt. We decline to address Carter's third assignment of error because it is moot. Accordingly, we reverse the trial court's judgment.

*Judgment reversed.*

PETER B. ABELE and KLINE, JJ., concur.

STEPHENSON, Presiding Judge, concurring separately.

I concur in judgment and opinion based upon the holding in *State v. Lovejoy* (1997), 79 Ohio St.3d 440, 449–450, 683 N.E.2d 1112, 1119–1120, which this court must follow as an intermediate court. Were the question an open one, I would

follow the reasoning of Justice Cook in her dissent, see *id.* at 458–459, 683 N.E.2d at 1125–1126, as being more consistent with and in conformity with the decisions of the United States Supreme Court on the issue.