DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment of conviction and sentence. The jury found Jack Waulk, defendant below and appellant herein, guilty of murder in violation of R.C. 2903.02. The following errors are assigned for our review:
 FIRST ASSIGNMENT OF ERROR: {¶ 2} "The trial court erred to the prejudice of the defendant in excluding from evidence a proffered out of court declaration against penal interest. This denial impaired the presentation of the defense to such an extent that the defendant was deprived of a fundamentally fair trial."
 SECOND ASSIGNMENT OF ERROR: {¶ 3} "The trial court erred to the prejudice of the defendant in overruling the defendant's motion for new trial the overruling of the motion denied to the defendant a fundamentally fair trial."
 {¶ 4} On September 18, 1999, a self-described "drinking crew" of Bernie Rossiter, Margo Imler, Keith Arthur, and appellant gathered at Bernie Rossiter's house-trailer to drink beer and to listen to music.[1]
The group apparently drank alcohol throughout the day. By nightfall, the group was so inebriated that they slept at the house-trailer and Margo Imler spent the night on a couch next to Keith Arthur.
 {¶ 5} During the night, Margo got up to use the bathroom and she noticed blood on her arm. When she returned to the living room she saw Keith Arthur lying on the floor. Margo and Bernie Rossiter tried unsuccessfully to rouse Arthur. Subsequently, they called EMTs who arrived and found that Arthur had no heartbeat. The coroner later concluded that Arthur died from "blunt force trauma" to the head. Appellant fled the area, but was eventually captured near Harrisburg, Pennsylvania, and returned to Ohio.
 {¶ 6} On October 8, 1999, the Ross County Grand Jury returned an indictment charging appellant with murder in violation of R.C. 2903.02. A second indictment was handed down on March 9, 2001 charging him with another count of murder.[2] Appellant pled not guilty and the matter eventually came on for jury trial over four days in October, 2001.
 {¶ 7} At trial, no question existed that appellant struck the victim after an argument they had in the middle of the night while the other occupants of the house-trailer (Bernie Rossiter and Margo Imler) slept. Appellant claimed, however, that Arthur swung a vodka bottle at him, but missed, and that he grabbed a piece of wood and swung it and struck Arthur in the head. Appellant also admitted to Pennsylvania police in an audio taped statement that he struck Arthur with a "stick" after they argued over Margo. Appellant further admitted he previously stated that he "ought to kill" Arthur because of an argument over stolen guns. Margo Imler also testified that the night of the incident, she woke from her drunken stupor at one point to find appellant standing in the house-trailer's living room and informing her that he had "slit [her] buddy's throat". Presumably, appellant referred to Arthur with whom Margo shared the living room couch.
 {¶ 8} The jury found appellant guilty on both counts of murder. On November 30, 2001, appellant filed a motion for new trial on grounds that the trial court wrongly excluded evidence from the jury and that he was the victim of prosecutorial misconduct. The prosecution filed a memorandum contra. On January 9, 2002, the trial court found that the two murder counts are allied offenses of similar import and that appellant would only be sentenced on one of them and imposed a prison sentence of fifteen years to life. This appeal followed.
 I {¶ 9} Before we review the assignments of error on their merits, we pause to address a threshold procedural issue. At the time appellant filed his notice of appeal, a motion for new trial pursuant to Crim.R. 33 was pending in the trial court. This means that there was not yet a final, appealable order in the case (see State v. Untied (Apr. 17, 2002), Muskingum App. No. CT2001-19; State v. Rhoden (Aug. 19, 1996), Pike App. No. 95CA562) and we did not have jurisdiction over the appeal. See Section 3(B)(2), Article IV, Ohio Constitution. However, on February 13, 2002, several weeks after appellant filed his notice of appeal, the trial court overruled appellant's motion for new trial. This action thus created a final order which should have been appealed. Nevertheless, the provisions of App.R. 4(C) require that appellant's premature notice of appeal be treated as if it had been filed immediately after the trial court overruled appellant's motion for new trial. We therefore conclude that we have jurisdiction to review this case on the merits.
 II {¶ 10} Appellant's first assignment of error asserts that the trial court erred by excluding from evidence certain proffered testimony. The defense called Brian Pritchard, an inmate at SEPTA and familiar with both appellant and Bernie Rossiter, to testify about a conversation that he had with Rossiter soon after Keith Arthur's death. The trial court excluded some of Pritchard's testimony at the prosecution's request. Outside the presence of the jury, the defense had the witness proffer the following statements:
 {¶ 11} "[DEFENSE COUNSEL]: Mr. Pritchard, going back to that day when you went over to Mr. Rossiter's house to assist him with his porch project, he brought out some beer and a bottle of whiskey . . .
 {¶ 12} "Mr. Pritchard: Yes.
 {¶ 13} "* * *
 {¶ 14} "[DEFENSE COUNSEL]: What did you two talk about
 {¶ 15} "Mr. Pritchard: Basically . . . I asked him if he knew what was going on in Jack's case and . . . he told me . . . Keith was lying on the floor, just out of no where he said Keith was lying on the floor, hesaid [he] grabbed a two by four, swung it like a golf club, hit him inthe head and his head split like a watermelon." (Emphasis added.)
 {¶ 16} Appellant states in his brief that he does not contest the trial court's decision to exclude this statement under the Rules of Evidence. He argues, however, that the statement's exclusion "denied him the right to present a defense" as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. As authority for that position, appellant cites Chambers v. Mississippi
(1973), 410 U.S. 284, 35 L.Ed.2d 297, 93 S.Ct. 1038 in which the United States Supreme Court held that hearsay rules could not be applied mechanistically to defeat the proper presentation of a defense. We are not persuaded.
 {¶ 17} The Chambers court, in essence, held that Due Process affords criminal defendants the right to introduce into evidence a third parties' declaration against penal interest (a confession) when circumstances surrounding that declaration provide considerable assurances of its reliability. See 410 U.S. at 300; also see Lilly v.Virginia (1999), 527 U.S. 116, 130, 144 L.Ed.2d 117, 119 S.Ct. 1887;State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126,767 N.E.2d 216, at ¶ 66. Those circumstances that provide assurances of reliability include (1) whether the statement was spontaneous and made shortly after the crime occurred, (2) whether the statement is corroborated by other evidence, (3) whether the statement is self-incriminating and against penal interest and (4) whether the declarant was present in the courtroom and available for cross-examination. Chambers, supra at 300-301; also see In re Carter
(1997), 123 Ohio App.3d 532, 540, 704 N.E.2d 625; State v. Branham
(1995), 104 Ohio App.3d 355, 359, 662 N.E.2d 54.
 {¶ 18} In the case sub judice, we agree with appellant that Rossiter's alleged declaration was incriminating. We, however, find none of the other indicia of reliability to be present here. We find nothing in the record to indicate that the statement was spontaneous or made shortly after the murder. Indeed, the fact that Pritchard asked about appellant's "case" suggests that the criminal matter was already pending and that the conversation was far removed from the crime in question. Also, we find no other evidence to corroborate the alleged confession. To the contrary, virtually all the evidence seems to point to the other direction. Appellant admitted that he struck the victim in the head with a stick or piece of wood. We find no evidence to show that the victim's head was "split like a watermelon." The coroner testified that Arthur sustained blunt force trauma to the head, but said nothing to indicate that the head sustained that degree of damage. Finally, we find no indication that Rossiter was in the courtroom and available for cross-examination. The absence of three of the four Chambers criteria distinguishes that case from the case at bar.
 {¶ 19} Additionally, we parenthetically note that Chambers was highly fact specific. Both the United States Supreme Court and the Ohio Supreme Court have held that the principles enunciated in Chambers are limited to the specific facts and circumstances of that case. See410 U.S. at 303; Yarbrough, supra at ¶ 69; also see Montana v. Egelhoff
(1996), 518 U.S. 37, 52, 135 L.Ed.2d 361, 116 S.Ct. 2013. The facts inChambers are distinguishable from the facts at issue here. The declarant in Chambers admitted responsibility for the crime on four separate occasions, once in a voluntary written confession given to the charged defendant's attorney and three times in conversations with friends, before he later recanted. 410 U.S. at 289. A witness also observed the declarant commit the crime. Id. We again note that in the case sub judice, nothing appears to be similar to the particular facts inChambers. Rossiter's alleged confession to Pritchard was, apparently, a one-time occurrence. Also, we find no other evidence to suggest that Rossiter committed the crime. Indeed, all other evidence points to appellant. Also, in Chambers the declarant was in the courtroom the day of trial and available for cross-examination. We find no indication in the record in the instant case that Rossiter was similarly available.
 {¶ 20} Thus, we conclude, after our review of the instant case and after our review of Chambers, that the instant case does not exhibit the same indicia of reliability as noted in Chambers. For these reasons, we find that the trial court's exclusion of this evidence did not violate appellant's Due Process rights. Accordingly, we overrule appellant's first assignment of error.
 II {¶ 21} In his second assignment of error, appellant argues that the trial court erred by overruling his motion for new trial. We disagree.
 {¶ 22} Our analysis begins from the premise that a Crim.R. 33 motion for new trial is directed to the sound discretion of the trial court and the court's decision shall not be reversed on appeal absent an abuse of discretion. State v. Schiebel (1990), 55 Ohio St.3d 71,564 N.E.2d 54, at paragraph one of the syllabus. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. State v. Clark
(1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331, 335; State v. Moreland
(1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898; State v. Adams
(1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149. When court's apply the abuse of discretion standard, appellate courts are admonished not to simply substitute their own judgment for that of the trial court. SeeState ex rel. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728,732, 654 N.E.2d 1254, 1258; In re Jane Doe 1 (1991). 57 Ohio St.3d 135,137-138, 566 N.E.2d 1181, 1184; Berk v. Matthews (1990), 53 Ohio St.3d 161,169, 559 N.E.2d 1301, 1308. Indeed, to establish an abuse of discretion, the end result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoff v. Fairview Gen.Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3.
 {¶ 23} Appellant asserts that he was entitled to a new trial because (1) the court erroneously excluded Brian Pritchard's aforementioned testimony from evidence and (2) during closing argument, the prosecutor made several references to the defense theory that Bernie Rossiter murdered Keith Arthur after the defense was prevented from introducing evidence (i.e. the testimony of Brian Pritchard) to support that theory. We disagree with appellant.
 {¶ 24} In light of our disposition of appellant's first assignment of error that the trial court did not err by excluding Brian Pritchard's testimony concerning Rossiter's alleged confession, we likewise conclude that the trial court did not err by refusing to grant a new trial on that basis. We thus focus our attention on appellant's argument that the prosecutor erroneously referred to this issue during closing argument.
 {¶ 25} Initially we note that our review of the transcript reveals that appellant did not object to the prosecutor's comments. It is well-settled that appellate courts will not consider errors which counsel could have called, but did not call, to the trial court's attention when such error could have been avoided or corrected by the court. State v.Joseph (1995), 73 Ohio St.3d 450, 455, 653 N.E.2d 285; State v. Lott
(1990), 51 Ohio St.3d 160, 174, 555 N.E.2d 293; State v. Gordon (1971),28 Ohio St.2d 45, 276 N.E.2d 243 at paragraph two of the syllabus. Moreover, the failure to object to alleged prosecutorial misconduct waives all but plain error. State v. Ballew (1996), 76 Ohio St.3d 244,254, 667 N.E.2d 369; State v. Lundgren, 73 Ohio St.3d 474, 485,653 N.E.2d 304; State v. Williams (1977), 51 Ohio St.2d 112,364 N.E.2d 1364, paragraph one of the syllabus. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost of caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240;State v. Hill (2001), 92 Ohio St.3d 191, 196, 749 N.E.2d 274; State v.Landrum (1990), 53 Ohio St.3d 107, 111, 555 N.E.2d 710. Plain error should not be invoked unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. State v. Jackson
(2001), 92 Ohio St.3d 436, 438, 751 N.E.2d 946; State v. Sanders (2001),92 Ohio St.3d 245, 263, 750 N.E.2d 90; State v. Underwood (1983),3 Ohio St.3d 12, 444 N.E.2d 1332, at the syllabus.
 {¶ 26} After our review of the record, we conclude that the better practice would have been to avoid comment on this part of the defense strategy in light of the fact that the trial court excluded Brian Pritchard's testimony from evidence. Nevertheless, we are not persuaded that the prosecutor's comments constitute misconduct, let alone plain error.
 {¶ 27} Appellant describes the following remark as the "crescendo" of such misconduct:
 {¶ 28} "There is no evidence whatsoever, not an iota of evidence to indicate that Bernie Rossiter was in the living room of that trailer when Keith Arthur was hit. The defense is asking you to sheerly speculate that Bernie Rossiter did this because there's no evidence."
 {¶ 29} Given that the evidence before the jury pointed to appellant as the perpetrator, we fail to see how this comment was unduly prejudicial or could have possibly changed the outcome of the trial. We also note that the defense stated in its opening statement that it would present evidence to show the jury that Bernie Rossiter "picked up a two by four, swung at [Arthur's] head like a golf club and his head cracked like a melon." The prosecution simply pointed out that the defense did not produce evidence on this point. Moreover, the trial court instructed the jury that they should not consider counsels' closing arguments as evidence. Jurors are presumed to follow the instructions that are given to them. See generally State v. Westwood (May 15, 2002), Athens App. No. 01CA50; State v. Gonzalez (Nov. 18, 1998), Athens 97CA52; State v. Metz
(Jun. 4, 1997), Washington App. 96CA03.
 {¶ 30} Finally, even if the prosecution's closing remarks could be characterized as prosecutorial misconduct, we would not be inclined to reverse the trial court's judgment. A prosecutor's misconduct is not grounds for a reversal of a conviction unless that misconduct deprives a defendant of a fair trial. State v. Carter (1995), 72 Ohio St.3d 545,557, 651 N.E.2d 965; State v. Loza (1994), 71 Ohio St.3d 61, 78,641 N.E.2d 1082. We find nothing in the record in this case to suggest that appellant was deprived of a fair trial. The overwhelming evidence adduced below — indeed, even appellant's own admission — revealed that appellant struck the victim's head. We do not believe that the prosecutor's comments concerning Bernie Rossiter affected the jury's decision.
 {¶ 31} For these reasons, we find that the trial court did not abuse its discretion by overruling appellant's Crim.R. 33 motion for new trial. Thus, we hereby overrule appellant's second assignment of error.
 {¶ 32} Having reviewed all the errors assigned and argued in the briefs, and after finding merit in none of them, we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
Harsha, J. Concurs in Judgment and Opinion as to Assignment of Error I and Dissents with Dissenting Opinion as to Assignment of Error II.
Kline, J. Concurs in Judgment and Opinion.
[1] Bernie Rossiter and Margo Imler are half-brother and half-sister. Keith Arthur apparently lived with Bernie Rossiter. The relationship between appellant and Margo Imler is less clear. Margo describes the relationship as "drinking buddies," whereas appellant said they were "best buddies" and that she was also his "girlfriend on the side."
[2] The first indictment alleged that appellant purposely caused the death of Keith Arthur. The second indictment alleged that appellant caused Arthur's death as a result of committing the crime of felonious assault.