DECISION AND JUDGMENT ENTRY
{¶ 1} John Randy Callihan appeals the Scioto County Court of Common Pleas' denial of his motion for a new trial. Callihan contends that the trial court erred in finding that the new evidence he presented is merely cumulative to former evidence, and that a key State witness's recantation of his trial testimony does not disclose a strong probability that Callihan would be found not guilty if a new trial were granted. Because we cannot find that the trial court abused its discretion in determining that the new evidence would not change the result of Callihan's trial, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} On May 14, 1990, the Scioto County Grand Jury indicted Callihan for aggravated trafficking of cocaine by possessing cocaine in an amount exceeding the bulk amount, but less than three times the bulk amount, in violation of R.C. 2925.03(A)(4). Callihan pled not guilty and the case proceeded to a trial by jury.
 {¶ 3} The evidence at trial revealed that several law enforcement officers executed a search warrant on Callihan's home on April 28, 1990. Inside the home, the officers discovered scales, razor blades, plastic bags, and a spoon and plastic bag that tested positive for cocaine. In Callihan's carport, they discovered a large amount of cocaine hidden in the hollow footpegs of a motorcycle. The motorcycle had Callihan's nickname engraved across the gas tank, and Callihan admitted to one of the officers that he owned the motorcycle.
 {¶ 4} The State presented the testimony of William Lavey, who stated that he informed police of Callihan's drug activity over a period of months preceding Callihan's arrest, and that he sold drugs for Callihan. Lavey testified that he had seen cocaine inside Callihan's home the night before Callihan's arrest. Additionally, Lavey testified that Callihan had obtained the footpegs from Florida for the purpose of transporting cocaine. Lavey testified that the State had not promised him any leniency for his testimony, but that he was hoping for leniency in his sentencing on related drug charges.
 {¶ 5} Callihan's friend, Morton Gayle Scott, testified on Callihan's behalf. Scott testified that on the day of Callihan's arrest, he was in the garage at Lavey's house, where Tom Branham and Lavey's brother, David Lavey ("David"), were working on Callihan's motorcycle. Scott testified that he observed David enter Lavey's home and emerge with a large baggie of cocaine. David, Scott, and Branham did not want to "hold" the cocaine, because they were aware that Lavey had been arrested for cocaine possession or trafficking the previous night.
 {¶ 6} Scott further testified that he and David divided the cocaine into two plastic bags and put one into each of the motorcycle's footpegs. Then David and Branham attached the footpegs to the motorcycle. David and Branham rode the motorcycle to Callihan's carport while Scott followed in his car. The three men left the motorcycle in Callihan's carport. Scott peeked in Callihan's window and saw Callihan asleep inside. Shortly thereafter, the police executed their warrant on Callihan's home and discovered the cocaine hidden in the footpegs.
 {¶ 7} Lavey's wife, Angie Lavey ("Angie"), testified that Callihan removed the motorcycle footpegs from her home in the morning on the day of Callihan's arrest. Angie testified that the State had threatened to report her to Children's Services if she did not cooperate in their investigation, and that people on the street had informed her that her children's safety was in jeopardy from Callihan if she did not testify favorably to him.
 {¶ 8} On October 19, 1990, the jury found Callihan guilty of aggravated trafficking of cocaine. The trial court determined specifications and sentenced Callihan to prison for four to ten years. Callihan appealed, and we affirmed his conviction and sentence. State v.Callihan (1992), 80 Ohio App.3d 184. The trial court granted summary judgment to the State on Callihan's subsequent petition for post-conviction relief, and we affirmed. State v. Callihan (Feb. 28, 1995), Scioto App. No. 94CA2449.
 {¶ 9} On October 17, 2000, Callihan filed a motion for a new trial, alleging newly discovered evidence in the form of new eyewitness testimony and Lavey's recantation of his testimony.[1] The trial court held a hearing on Callihan's motion. At the hearing, Joseph McKinnon testified that he was with Scott on the day of Callihan's arrest and that he observed Scott put the cocaine in the footpegs, that he and Scott then followed David and Branham to Callihan's home, and that David and Branham left the motorcycle in the carport while Callihan slept. McKinnon stated that he did not come forward with this information at trial because he was only fifteen years old at the time of the incident, and his mother forbade him to talk about it. McKinnon has since been convicted of a felony. He met Callihan and offered to testify on Callihan's behalf when both were incarcerated at the Orient Correctional Facility.
 {¶ 10} Attorney Harry Reinhart testified that he conducted a tape-recorded interview of Lavey in 1995. He admonished Lavey to tell the truth during the interview. In the interview, Lavey told Reinhart that he lied at trial about being at Callihan's house the night before his arrest, lied about knowing that Callihan got the footpegs in Florida, lied about being shot by Callihan or at Callihan's direction,[2] and lied about whether the state promised to dismiss charges against him in exchange for his testimony. The State did not raise a hearsay objection to Reinhart's testimony at the hearing. Callihan filed the tape-recorded statement of Lavey's recantation with the trial court.
 {¶ 11} The trial court issued a decision and judgment entry, wherein it determined that Callihan failed to demonstrate that McKinnon's new testimony and Lavey's recantation met the factors enumerated by Statev. Petro (1947), 148 Ohio St. 505, for a new trial. Specifically, the trial court found that McKinnon's testimony was merely cumulative to the former evidence and did not disclose a strong probability that the result of a new trial would be different than that of the original trial. Additionally, the court considered the audiotape of Lavey's recantation and Reinhart's testimony, but found that the recantation was not of such character and weight as to justify setting aside the jury's determination in Callihan's original trial.
 {¶ 12} Callihan appeals, asserting the following single assignment of error: "THE TRIAL COURT'S DENIAL OF APPELLANT CALLIHAN'S NEW TRIAL MOTION VIOLATED HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION; CRIM.R. 33."
 II. {¶ 13} The decision whether to grant or deny a motion for new trial on the basis of newly discovered evidence is committed to the sound discretion of the trial court. State v. Williams (1975), 43 Ohio St.2d 88, paragraph two of the syllabus. See, also, State v. Matthews (1998),81 Ohio St.3d 375, citing State v. Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus. We will not reverse a trial court's denial of a motion for new trial absent an abuse of that discretion. State v.Hawking (1993), 66 Ohio St.3d 339, 350; Williams at paragraph two of the syllabus. An abuse of discretion is more than a mere error in judgment; it implies that a court's ruling is unreasonable, arbitrary, or unconscionable. Richard v. Seidner (1996), 76 Ohio St.3d 149; Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 14} A convicted offender seeking a new trial based on the ground of newly discovered evidence bears the burden of demonstrating to the trial court that the new evidence "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. Petro
(1947), 148 Ohio St. 505, syllabus; Hawkins at 350.
 {¶ 15} The State does not dispute that the evidence Callihan presented in support of his motion for a new trial has been discovered since his trial, could not have been discovered before trial, and is material to the issues. However, the State maintains that the trial court did not abuse its discretion in finding that the new evidence is merely cumulative, merely contradicts or impeaches the former evidence, and does not disclose a strong probability that the result of a new trial would be different.
A. Lavey's Recantation
 {¶ 16} Callihan contends that Lavey's recantation is credible and creates the likelihood of a different result on retrial, and that the trial court erred in summarily rejecting it. Callihan further contends that the trial court erred in "hinting" that it rejected the recantation because he presented it through the testimony of Reinhart.
 {¶ 17} A State witness's recantation of his or her trial testimony does not entitle the defendant to a new trial as a matter of law. Statev. Curnutt (1948), 84 Ohio App. 101, 112. Rather, the determination of whether to grant a new trial rests in the sound discretion of the trial court, whose action will not be set aside except for clear and manifest abuse of that discretion. Id. Recanting witnesses should be viewed with extreme suspicion. United States v. Chambers (6th Cir. 1991),944 F.2d 1253, 1264. "In considering a motion for new trial based on the contention that an affidavit by a recanting witness constitutes newly discovered evidence the first test to be applied by the judge is whether the court is reasonably well satisfied that the prior testimony was false * * *. If that first and primary ground is not satisfied, the primary ground for granting the new trial is lacking." Chambers at 1264, citingGordon v. United States (6th Cir. 1949), 178 F.2d 896, 900.
 {¶ 18} In this case, Reinhart testified at the new trial hearing that Lavey met with him in his office and, in a tape-recorded interview, told Reinhart that he was untruthful at Callihan's trial. The State did not object to Reinhart's testimony as hearsay or question why Callihan did not call Lavey to testify until it filed its post-hearing brief. In its decision and judgment entry the trial court considered the State's belated hearsay objection and noted, "there may be some question as to what William Lavey would say in 2001 about the matter." The court nonetheless determined that it needed to consider Lavey's recantation in the tape-recorded interview. Thus, the trial court did not reject Lavey's recantation based upon the State's hearsay objection.
 {¶ 19} After considering Reinhart's testimony and the tape-recorded interview, the trial court was not persuaded that Lavey's trial testimony was false. We cannot say that the trial court abused its discretion in making this determination, especially given that Lavey's trial testimony was sworn and his recantation was unsworn. Thus, we find that the trial court did not err in determining that Lavey's recantation did not entitle Callihan to a new trial.
B. McKinnon's Testimony
 {¶ 20} The trial court found that McKinnon's testimony was merely cumulative to the former evidence and does not disclose a strong probability that the result would change if the court granted a new trial.
 {¶ 21} Because the standard is that the evidence be not "merely" cumulative, it will not be deemed cumulative simply because part of its content was covered or duplicated by evidence produced at trial. Statev. Barber (1982), 3 Ohio App.3d 445, 447. However, the testimony must contain some "additional elements which contribute significantly" to defendant's case in order to be deemed not merely cumulative. Barber,
citing State v. Rife (Oct. 9, 1980), Franklin App. Nos. 80-AP-77 and 80-AP-172. See, also, State v. Baker (Oct. 15, 2001), Clinton App. No. 2000-08-018; State v. Wooley (Jan. 30, 1985), Summit App. Nos. 11620 and 11785. If every significant element of the new testimony duplicates evidence presented at trial, the evidence is merely cumulative. Barber at 447.
 {¶ 22} Callihan contends that while McKinnon's testimony is corroborative of Scott's trial testimony, corroborative and cumulative are not the same. In support, Callihan relies upon Washington v. Smith
(E.D.Wis. 1999), 42 F. Supp. 1149, wherein the court distinguished between the two terms and determined that "cumulative thus has the connotation of `heaped on' evidence offered to prove something already established beyond reasonable dispute." Additionally, Callihan cites Black's Law Dictionary's definition of "cumulative evidence" as "[t]hat which goes to prove what has already been established by other evidence." Black's Law Dictionary (4 Ed.Rev. 1968) 455. We note that this is the secondary portion of the definition given by Black's; the primary definition states "[a]dditional or corroborative evidence to the same point." (Emphasis added.) Id. The definition further states "[c]umulative evidence is additional evidence of the same kind to the same point." Id.
Corroborating evidence, in contrast, is defined as "additional evidence of a different character to the same point." Id. at 414.
 {¶ 23} McKinnon's testified that he observed Scott load the motorcycle footpegs with cocaine, whereas Scott testified that he loaded the footpegs with cocaine. Thus, the evidence of McKinnon, as an eyewitness, is of a different character than that of Scott, as an actor, to the same point: that Scott loaded the footpegs with the cocaine. However, in every other manner, McKinnon's testimony duplicates other evidence offered at trial. The evidence does not contain any additional elements that contribute significantly to Callihan's case.
 {¶ 24} Moreover, even if a jury believes Scott's testimony as corroborated by McKinnon, it could still find Callihan guilty of possessing the cocaine in the footpegs. In the context of drug offenses, "possession" may be actual or constructive; if the evidence demonstrates that defendant was able to exercise dominion and control over the drugs, the defendant can be convicted of possession. In re Carter (1997),123 Ohio App.3d 532. In this case, Callihan had actual possession of the cocaine. Further, Angie and Lavey's combined testimony illustrated that Callihan had dominion and control over the cocaine in that he owned the footpegs and the motorcycle, had the footpegs in his possession prior to having them attached to his motorcycle, purchased the footpegs for the specific purpose of hiding cocaine, and gave cocaine to Lavey the previous night. Scott's testimony showed that Callihan directed or gave permission to David and Branham to attach the footpegs to his motorcycle. Moreover, the discovery of scales, razor blades, and a plastic bag containing cocaine residue constitutes circumstantial evidence that Callihan possessed a large amount of cocaine. Thus, McKinnon's testimony is not inconsistent with Callihan's conviction, and therefore does not disclose a strong probability that it would change the result if the trial court granted Callihan a new trial.
 {¶ 25} Finally, the trial court noted that McKinnon's credibility is questionable, and thus the chances that a jury would believe McKinnon are slim, because McKinnon is now a convicted felon who spent time with Callihan while they were both incarcerated at the Orient Correctional Facility. Callihan argues that McKinnon's current status as a felon is irrelevant, as McKinnon was not a felon at the time of Callihan's original trial. However, the test the trial court applied was whether the new evidence disclosed a strong probability that the result would change if the court granted a new trial. McKinnon's status as a felon is part of the new evidence and, as such, is relevant to determining whether a strong probability exists that Callihan would not be convicted if the court granted Callihan a new trial.
 {¶ 26} Taking each of the above factors into consideration, we cannot say that the trial court abused its discretion in finding that McKinnon's evidence was merely cumulative to that offered at trial and that McKinnon's testimony did not disclose a strong probability that the result would be different if the trial court granted Callihan a new trial.
 III. {¶ 27} In conclusion, we find that the trial court did not abuse its discretion in determining that the new evidence Callihan presented does not disclose a strong probability that it would change the result if the trial court granted him a new trial. Therefore, we overrule Callihan's assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure.
Exceptions.
Abele, P.J.: concurs in judgment and opinion.
Evans, J.: concurs in judgment only.
[1] The State notes that Callihan had already served his entiresentence by the time he filed this motion. "A person convicted of afelony has a substantial stake in the judgment of conviction whichsurvives the satisfaction of the judgment imposed upon him or her.Therefore, an appeal challenging a felony conviction is not moot even ifthe entire sentence has been satisfied before the matter is heard onappeal." State v. Golston (1994), 71 Ohio St.3d 224, syllabus.
[2] We note that Lavey testified at trial that someone shot at himshortly after Callihan's arrest, but did not implicate Callihan in theshooting.